# Notice of Removal Attachment No. 1

# Complaint for Breach of Contract and Declaratory Judgment

FILED

18 FEB 26 AM 9:47

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 18-2-05212-2 SEA

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

PHYTELLIGENCE, INC.,

        Plaintiff,

   v.

WASHINGTON STATE UNIVERSITY,

        Defendant.

NO. _____ SEA

COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT

## I.  PARTIES

1.  Phytelligence, Inc. ("Phytelligence") is a Washington corporation headquartered in Seattle, Washington.

2.  Washington State University ("WSU") is a Washington state agency located in Pullman, Washington.

## II.  JURISDICTION & VENUE

3.  Jurisdiction and venue are proper in this court pursuant to RCW 4.92.010.

## III.  FACTS

4.  Phytelligence utilizes cutting-edge science that employs revolutionary techniques to propagate plants at much faster than conventional rates, allowing lead time for the growth of plants to be compressed substantially, thus enabling plants to grow more quickly

COMPLAINT FOR BREACH OF CONTRACT AND
DECLARATORY JUDGMENT - 1

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6376013.1

1    and bear fruit faster.  Phytelligence was founded by Dr. Amit Dhingra, an associate professor at

2    WSU, who remains Phytelligence's Chief Science Officer.

3           5.      Phytelligence was created to address the needs of food crop growers.  For

4    decades, the legacy nursery industry has severely underserviced grower demand, at least in part

5    because of the shortcomings of traditional growth methods.  Traditional growth methods for

6    developing a fruit tree requires 10 to 12 years before the tree is commercially viable.

7    Phytelligence leverages new methods and technology to meet that demand, and to do so in 5

8    years or less.

9           6.      On or about November 6, 2012, Dr. Dhingra asked representatives at

10   Washington State University Research Foundation ("WSURF") about opportunities to

11   propagate a new apple cultivar, identified as 'WA 38,' which, on information and belief, had

12   been developed by employees of WSU and was wholly owned by WSU and/or WSURF.

13          7.      On information and belief, WSURF, a 501(c)(3) entity separate from WSU,

14   carried out technology licensing for WSU prior to the formation of the Washington State

15   University Office of Commercialization ("WSU-OC"), which is part of WSU and which now

16   carries out technology licensing for WSU, following the dissolution of WSURF in or about

17   2013.  As used herein, "WSU" includes WSURF and WSU-OC.

18          8.       On or about November 27, 2012, Phytelligence and WSURF entered into an

19   Agreement to Propagate Apple Cultivar Plant Materials For Washington State University

20   ("Propagation Agreement").  *See*, Exhibit A.  The purpose of the Propagation Agreement was

21   to support WSU in providing WA 38 plant material "for the purposes of Distributing said

22   plants to nurseries, growers, and others under WSURF license agreements."  *See*, Exhibit A,

23   ¶3.  The recitals of the Propagation Agreement further stated:

24

25

COMPLAINT FOR BREACH OF CONTRACT AND
DECLARATORY JUDGMENT - 2

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6376013.1

WHEREAS, certain plant Cultivars (defined below) were developed by Dr. Bruce Barritt and Dr. Katherine Evans (Dr. Evans is hereinafter referred to as "Breeder"), employees of WSU, working either alone or together with other researchers at WSU, and are wholly owned by WSU and/or WSURF;

WHEREAS, WSU and WSURF do not have the facilities to propagate, grow, and maintain a sufficient number of Certified Virus-Tested (defined below) plants of the Cultivars for the purpose of Distributing (defined below) said plants to nurseries, growers, and others under WSURF license agreements;

WHEREAS, WSU and WSURF have requested that Propagator Propagate (defined below) plants of the Cultivars for eventual Distribution, including Distribution to WSU; and

WHEREAS, Propagator is willing to provide this service to WSU and WSURF under the terms and conditions of this Agreement.

9.      In summary, as expressly provided in these recitals, because WSU did not have the necessary facilities to propagate, grow, and maintain Certified Virus-Tested plants—but Phytelligence did and was willing to do so—WSU requested Phytelligence's services in propagating WA 38 materials for the eventual sale to third parties.  In exchange for these services, WSU granted to Phytelligence the option to propagate WA 38 for commercial sale, as a provider and/or seller in WSU licensing programs.  *See*, Exhibit A, Section 4.

10.     Absent WSU's grant of the option for Phytelligence to propagate WA 38 plantlets and trees for commercial sale and disseminate large quantities of the highest quality WA 38 to growers, Phytelligence would have had little incentive to enter into the Propagation Agreement and to make the significant investment in resources required to perform under the Propagation Agreement.

11.     Pursuant to the Propagation Agreement, Phytelligence obtained from WSU Certified Virus-Tested WA 38 budwood with which to propagate Plant Materials for WSU. *See*, Exhibit A, Section 5 and Ex. A.

12.     Phytelligence performed and propagated materials in compliance with its obligations in the Propagation Agreement.  Under the Propagation Agreement, Phytelligence has successfully propagated over 200 self-rooted WA 38 budwood trees.  Moreover, Phytelligence has demonstrated its ability to leverage its advanced technologies to produce

COMPLAINT FOR BREACH OF CONTRACT AND
DECLARATORY JUDGMENT - 3

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6376013.1

high quality Certified Virus-Tested materials in a reliable fashion,  with the additional benefit that large volumes of virus and disease free, genetically confirmed true to type WA 38 materials can be made available to service the unmet demand for growers much more quickly than through traditional methods.

13.   The Propagation Agreement contains two conditions which must be satisfied for Phytelligence to exercise its option to commercialize WA 38:  (1) WSU must have officially released WA 38, and (2) Phytelligence must be an authorized provider in good standing with the WA State Fruit Tree Certification program.  *See*, Exhibit A, Section 4.  If those conditions are met, Phytelligence is entitled to exercise its option to secure a license by WSU or an agent of WSU.  *See, id.*

14.   Both of these conditions were met long ago.  WSU officially released WA 38 for commercialization in 2014, and Phytelligence has maintained itself as an authorized provider in good standing by the WA State Fruit Tree Certification program since 2012.

15.   Since the launch of WA 38, Phytelligence has been working with decision makers and stakeholders at WSU and to obtain the right to sell WA 38 plant materials consistent with its rights in the Propagation Agreement.

16.   Strangely, Phytelligence has met substantial resistance by the decision makers at WSU, despite its clear contractual right to a non-exclusive commercial license. That resistance has taken many forms, including misrepresentation of the rights granted to Phytelligence under the Propagation Agreement.

17.   On or about January 2014, WSU entered into an Intent to Commercialize Agreement with Proprietary Variety Management, LLC ("PVM").  PVM then executed an exclusive sub-license to the Northwest Nursery Improvement Institute ("NNII") to manage propagation of WA 38 by nurseries, which was publicly announced in or around March 2014. The nurseries would include Brandt Fruit Trees, LLC.  Notably, on information and belief,

COMPLAINT FOR BREACH OF CONTRACT AND
DECLARATORY JUDGMENT - 4

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6376013.1

Lynnell Brandt is the owner of Brandt Fruit Trees, LLC, is the current President of PVM, and was the Previous president of NNII.  Moreover, on information and belief, Lynnell Brandt's son, Kevin Brandt, is currently a PVM executive, an NNII executive, and a Brandt Fruit Trees, LLC executive.

18.    In the public announcement of NNII's involvement in the management of propagation of WA 38 plan materials, PVM indicated that there had been no decision as to whether Phytelligence would participate in the propagation and/or commercialization of WA 38.

19.    Effective June 27, 2014, WSU and PVM entered into the Management Contract for Commercialization of Washington State University Apple Cultivar, 'WA 38'.  That agreement granted PVM exclusive propagation and commercialization rights to WA 38 and provided that NNII would be the exclusive subcontractor for propagation of WA 38.  The document functions as a license agreement for the commercialization of WA 38, and closely resembles, by its express terms, an exclusive license agreement.

20.    Neither before or after PVM was granted this exclusive license for WA 38 did WSU notify Phytelligence either that it intended to provide PVM an exclusive license, nor that it had done so.  At no point did WSU address the non-exclusive license option held by Phytelligence pursuant to the Propagation Agreement.  Instead, WSU elected to exclude Phytelligence inappropriately from related discussions.  WSU also engaged in multiple communications which contained incomplete, inaccurate, and/or misleading information using its considerable power, intentionally or negligently, to undermine Phytelligence's option right and effectively prevent Phytelligence from propagating WA 38 commercially.

21.    During that same time frame, publicly available documents and industry feedback received by Phytelligence indicated the supply of WA 38 would be insufficient to meet the substantial demand.  Phytelligence was approached by multiple growers who wished

COMPLAINT FOR BREACH OF CONTRACT AND
DECLARATORY JUDGMENT - 5

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6376013.1

1    to purchase WA 38 budwood from Phytelligence, but ultimately Phytelligence could not

2    service that demand despite holding the right to a commercial license.

3        22.    In 2016, Phytelligence again turned to WSU to assist in formally obtaining its

4    commercial license, so that it could meet the inbound requests for orders it was receiving from

5    growers.

6        23.    Phytelligence's option in the Propagation Agreement grants it a right to license

7    from WSU or its agent.  However, based on representations and direction by WSU and Mr.

8    Brandt, which Phytelligence reasonably relied upon, Phytelligence sought the ability to

9    commercially propagate WA 38 through PVM.  Phytelligence's efforts to obtain a commercial

10   license through PVM were unsuccessful.  Phytelligence was informed that it needed to join

11   NNII, a subcontractor of PVM, in order to obtain a commercial license for WA 38.  While

12   Phytelligence approached these discussions diligently and in good faith, its efforts proved futile

13   because of, among other things, NNII's unwillingness or inability to provide Phytelligence

14   with objective criteria or other requirements for membership.

15       24.    Phytelligence engaged for over two years in negotiations and multiple

16   communications with WSU with the goal of exercising its option for a commercial license

17   granted in the Propagation Agreement.  Yet, WSU's actions and inactions, as well as the

18   actions and inaction of its agent(s) and others have prevented Phytelligence from executing its

19   commercial license.

20       25.    Despite Phytelligence's continuous efforts to secure a commercial license

21   consistent with its option rights in the Propagation Agreement, WSU has purported to

22   terminate the Propagation Agreement—and with it, Phytelligence's option rights—and has

23   demanded that Phytelligence destroy all materials produced in accordance with the Propagation

24   Agreement.

25

COMPLAINT FOR BREACH OF CONTRACT AND
DECLARATORY JUDGMENT - 6

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6376013.1

1

2

## IV.  CAUSES OF ACTION

### BREACH OF CONTRACT

3

4

26.     Phytelligence restates and incorporates by reference the allegations contained in paragraphs 1-25 of the Complaint.

5

6

7

27.     By entering into its arrangements with PVM and refusing to honor the obligations in the Propagation Agreement, WSU has materially breached its obligations to Phytelligence.

8

9

28.     The breaches of the Propagation Agreement by WSU proximately caused damage to Phytelligence in an amount to be proven at trial.

10

### DECLARATORY JUDGMENT

11

12

29.     Phytelligence restates and incorporates by reference the allegations contained in paragraphs 1-28 of the Complaint.

13

14

15

16

30.     Pursuant to RCW 7.24 *et. seq.* Phytelligence is entitled to declaratory judgment to determine its rights and status of under the Propagation Agreement, including, whether WSU breached the Propagation Agreement and Phytelligence's entitlement to a commercial license for WA 38.

17

18

19

31.     The granting of such a declaratory judgment will serve a useful purpose in clarifying and settling the legal relations in issue and will afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding.

20

### V.  RELIEF REQUESTED

21

Wherefore, Plaintiff requests the Court grant the following relief:

22

23

1.      A declaration and order finding that WSU has breached the Propagation Agreement;

24

25

COMPLAINT FOR BREACH OF CONTRACT AND
DECLARATORY JUDGMENT - 7

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

6376013.1

2.  Specific performance of the Propagation Agreement resulting in issuance of a license to Phytelligence by WSU or its agent to propagate WA 38 plant materials for commercial sale;

3.  An award of damages in an amount to be proven at trial and an award of costs and fees authorized by law or in equity;

4.  And such other or further relief, whether legal or equitable, as the Court may find merited.

DATED this 23rd day of February, 2018.

s/Daniel A. Brown, WSBA #22028
Daniel A. Brown, WSBA #22028
Daniel J. Velloth, WSBA #44379
Attorneys for Plaintiff Phytelligence, Inc.
WILLIAMS, KASTNER & GIBBS PLLC
601 Union Street, Suite 4100
Seattle, WA 98101-2380
Telephone:  (206) 628-6600
Fax:  (206) 628-6611
dbrown@williamskastner.com
dvelloth@williamskastner.com

COMPLAINT FOR BREACH OF CONTRACT AND
DECLARATORY JUDGMENT - 8

6376013.1

### AGREEMENT TO PROPAGATE APPLE CULTIVAR PLANT MATERIALS
### FOR WASHINGTON STATE UNIVERSITY

This Agreement (hereinafter "Agreement") is made effective November 27, 2012 (hereinafter "Effective Date") between the Washington State University Research Foundation (hereinafter "WSURF"), a nonstock, nonprofit Washington corporation having an office at 1610 NE Eastgate Blvd., Suite 650, Pullman WA 99163, and Phytelligence, Inc. (hereinafter "Propagator"), having a principal place of business at 1300 NE Henley Ct., Pullman, WA 99163.

WHEREAS, certain plant Cultivars (defined below) were developed by Dr. Bruce Barritt and Dr. Katherine Evans (Dr. Evans is hereinafter referred to as "Breeder"), employees of WSU, working either alone or together with other researchers at WSU, and are wholly owned by WSU and/or WSURF;

WHEREAS, WSU and WSURF do not have the facilities to propagate, grow, and maintain a sufficient number of Certified Virus-Tested (defined below) plants of the Cultivars for the purpose of Distributing (defined below) said plants to nurseries, growers, and others under WSURF license agreements;

WHEREAS, WSU and WSURF have requested that Propagator Propagate (defined below) plants of the Cultivars for eventual Distribution, including Distribution to WSU; and

WHEREAS, Propagator is willing to provide this service to WSU and WSURF under the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth below, the parties covenant and agree as follows:

DEFINITIONS: As used in this Agreement, the following terms will have the meaning set forth below:

"Cultivar(s)" shall mean the plants and their corresponding genotypes that are indicated by their WSU selection number or cultivar designation and are listed in Exhibit A to this Agreement.

"Propagate" shall mean to generate or otherwise produce from the Plant Material (defined below) provided by WSU, the authorized number plants of each Cultivar and to grow, care for, and maintain the authorized number of plants of each Cultivar as defined in Exhibit A.

"Distribute(d)" and "Distribution" shall mean the transfer and/or sale of the plants of a particular Cultivar to third parties in accordance with license agreements signed between WSURF and such third parties.

"Plant Material(s)" means the Certified Virus-Tested plants and plant parts, including budwood, of the Cultivars, and derivatives of such plants and plant parts including, but not limited to, plants or vegetative material in vitro, meristematic material, bareroot plants, plants in soil or other material, sports, plant tissue capable of being propagated either in tissue culture or by any other means, isolated seeds or achenes, pollen or ovule, and genetic material derived in whole or in part from the Plant Materials.

WSURF-Phytelligence, Inc., Apple Budwood Prop. Agrmt 11/27/12                  Page 1 of 5

"**Certified Virus-Tested**" means Plant Material that has undergone virus testing by the National Clean Plant Network, WSU Prosser, and is certified as virus-tested under the Washington State Department of Agriculture's ("WSDA's") Washington State Fruit Tree Certification Program.

1. <u>PROPAGATOR AGREES TO COMPLY WITH THE FOLLOWING TERMS AND CONDITIONS:</u>

   a. To grow only the specific number of plants of the Cultivars that are listed in Exhibit A, subject to the conditions set forth herein, and in accordance with other instructions, if any, that may be agreed upon from time-to-time between Propagator and Breeder. Propagator is prohibited from using Plant Materials for, including but not limited to, crossbreeding, cross pollination, mutagenesis, or through any genetic engineering techniques. Propagator is also prohibited from using or altering any other plant or plant material using Plant Materials from the Cultivars by, including but not limited to crossbreeding, cross pollination, or through any genetic engineering techniques. Propagator may use its usual commercial techniques for generating plants and/or budwood from Plant Materials under this Agreement.

   b. Not to ship, transport, transfer, sell, offer to sell, and/or disclose any information regarding any of the Cultivars or their Plant Materials to any person or entity, domestic or foreign, for any purpose whatsoever, except in accordance with instructions in this subsection and any instructions to the contrary by Breeder. Propagator shall secure the Plant Materials against misappropriation by third parties to Propagator's best ability to do so. <u>This explicitly prohibits the transfer of the Cultivars or their Plant Materials for commercial purposes including providing photographs or other images of the Plant Materials in, but not limited to, any catalog, brochure, price list, popular press, e-mail, or website unless Propagator has authorization to do so under a separate contract with WSURF, or an agent of WSURF, in accordance with Section 4 of this Agreement.</u> Notification by e-mail is acceptable written notification.

   c. Not to abandon any of the Plant Materials. Moreover, should Propagator sell, or otherwise relinquish, any part of the land identified in Exhibit A as Propagator's location, Propagator must destroy, at Propagator's own expense, the Plant Materials located there before a third party acquires said land, unless other arrangements are made with WSURF prior to sale or relinquishment of land.

   d. To pay for all costs of establishing and maintaining plants of the Cultivars. Propagator acknowledges that any costs and charges associated with obtaining the plants of the Cultivars do not constitute a sale thereof by WSU or WSURF to Propagator.

   e. To permit Breeder or agent of WSURF the reasonable opportunity to observe Propagated Plant Materials, if requested, for the purpose of: a) inspecting the Plant Materials, b) collecting data, and c) determining compliance by Propagator with the terms of this Agreement.

   f. To provide Breeder with annual written Propagation reports, if any, in a format agreed upon between Propagator and Breeder.

WSURF-Phytelligence, Inc., Apple Budwood Prop. Agrmt 11/27/12          Page 2 of 5

EXHIBIT A - 2

2.  WARRANTY:  WSU AND WSURF MAKE NO REPRESENTATIONS AND EXTEND NO WARRANTIES OF ANY KIND, EITHER EXPRESS OR IMPLIED. NEITHER WSU NOR WSURF GUARANTEES THE PERFORMANCE OF THE PLANT MATERIALS, NOR THE FRUIT, NOR THEIR FREEDOM FROM PESTS AND/OR DISEASES. HOWEVER, TO THE BEST OF WSU'S AND WSURF'S KNOWLEDGE, THE PLANT MATERIALS ARE FREE FROM PESTS AND/OR DISEASES THAT MAY POSE A THREAT TO COMMERCIAL PRODUCTION.    THERE  ARE  NO  EXPRESS  OR  IMPLIED  WARRANTIES  OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, NOR DOES WSU OR WSURF WARRANT THAT THE PLANT MATERIALS WILL NOT INFRINGE ANY PATENT, COPYRIGHT, TRADEMARK, OR OTHER INTELLECTUAL PROPERTY RIGHTS. NEITHER WSU NOR WSURF SHALL BE RESPONSIBLE FOR DAMAGE TO PLANT MATERIALS IN TRANSIT OR LOSSES DUE TO POOR GROWING CONDITIONS OR IMPROPER CARE.

3.  OWNERSHIP OF PLANT MATERIAL:  Propagator acknowledges that Plant Material of the Cultivars that has not been Distributed shall remain the sole and absolute property of WSU and/or WSURF.  Any sports or mutations discovered on any plants of the Cultivars being grown by Propagator shall be immediately reported to Breeder and shall be the exclusive property of WSU.

4.  OPTION TO PARTICIPATE AS A PROVIDER AND/OR SELLER IN WSURF LICENSING PROGRAMS:    If Propagator is an authorized provider in good standing under WSDA's Washington State Fruit Tree Certification Program in accordance with Section 5, below, by signing this Agreement, Propagator is hereby granted an option to participate as a provider and/or seller of Plant Materials listed in Exhibit A, if the Cultivar is officially released by WSU and becomes available for licensing by WSURF, or an agent of WSURF.  Propagator will need to sign a separate contract with WSURF, or an agent of WSURF, to exercise this option.  If any of the WSU Cultivars listed in Exhibit A are not released by WSU, Propagator agrees to destroy all Plant Materials of such Cultivars upon written notification by WSURF that it will not release a specific Cultivar.  It is anticipated that this Agreement will be amended from time-to-time to include additional Cultivars under Exhibit A.

5.  SOURCE  OF  CERTIFIED  VIRUS-FREE  PLANT  MATERIAL/STATUS  OF PROPAGATOR UNDER NRSP5 PROGRAM:

    a.  Propagator may obtain Certified Virus-Tested Plant Material from the manager of the NRSP5 Program (WSU's IAREC, Prosser, WA) or Certified Virus-Tested trees from any site approved under the Washington State Fruit Tree Certification Program once this Agreement has been signed between Propagator and WSURF.

    b.  By accepting Certified Virus-Free Plant Materials, Propagator warrants that it is an authorized participant under the Washington State Fruit Tree Certification Program and that it will Propagate the Plant Materials in accordance with the requirements of that Program.

6.  PUBLICITY:  Propagator shall not use the name of WSU, nor any adaptation, symbol, or logo of WSU in any advertising, promotional, or sales literature without the prior written permission of WSU or WSURF.

WSURF-Phytelligence, Inc., Apple Budwood Prop. Agrmt 11/27/12          Page 3 of 5

EXHIBIT A - 3

7. **TERMINATION**: Either party may terminate this Agreement prior to the Termination Date (defined below) with respect to any or all of the Cultivars listed in Exhibit A of this Agreement for any reason by providing sixty (60) days written notice to the other party. Propagator agrees to destroy, or relinquish control of, any, or all, Cultivars covered in the written notification within thirty (30) days of the date of notice of termination. If there has been no prior notice of termination by either party, this Agreement will expire on the Termination Date of December 31, 2020. Both parties may mutually agree to extend this Agreement in five (5) year increments. Propagator agrees to destroy all Plant Materials of the Cultivars within thirty (30) days of the Termination Date if there has been no extension of this Agreement before the Termination Date.

8. **GOVERNING LAW**: This Agreement will be interpreted and construed in accordance with the laws of the state of Washington, including the rights associated with breech, indemnification, injunctive relief, and/or untimely or wrongful disclosure of proprietary information.

9. **NOTICES**: Any notices pursuant to this Agreement shall be in writing and addressed to the intended party at the address below.

| To WSURF: | To Propagator: |
|---|---|
| WSURF | Phytelligence, Inc. |
| Attn: Executive Director | c/o: *CHRIS LEYERLE* |
| 1610 NE Eastgate Blvd., Suite 650 | 1300 NE Henley Ct. |
| Pullman, WA 99163 | Pullman, WA 99163 |

10. **ASSIGNMENT**: The rights associated to the Plant Materials of the Cultivars and/or the responsibilities of the Propagator in this Agreement may not be assigned to any third party by Propagator except with the prior written consent of WSURF.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date set forth herein by their duly authorized representatives.

WASHINGTON STATE UNIVERSITY
RESEARCH FOUNDATION

_____
Anson Fatland, Interim Executive Director

Date: 11/28/12

PHYTELLIGENCE, INC.

By: _____

Name: *CHRIS LEYERLE*
           (please print)

Title: *CEO*

Date: 11/27/12

EXHIBIT A - 4

## EXHIBIT A

| WSU Selection Number or Cultivar | Type of Plant Species Provided | Type of Material Provided | Number of Authorized Plants of Each Cultivar Recipient is Allowed to Possess |
|---|---|---|---|
| WA 38 | apple | budwood* | Unlimited |

*Certified Virus-Free Plant Material

WSURF-Phytelligence, Inc., Apple Budwood Prop. Agrmt 11/27/12      Page 5 of 5

EXHIBIT A - 5