Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PHYTELLIGENCE, INC.,

Plaintiff,

v.

WASHINGTON STATE

UNIVERSITY,

Defendant.

No. 2:18-cv-00405 RSM

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND ORDER

The parties hereby stipulate to the following provisions regarding the discovery

of electronically stored information ("ESI") in this matter:

**A.      General Principles**

1.      An attorney's zealous representation of a client is not compromised by conducting

discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate

in facilitating and reasonably limiting discovery requests and responses raises litigation costs and

contributes to the risk of sanctions.

2.      The proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be

applied in each case when formulating a discovery plan. To further the application of the

proportionality standard in discovery, requests for production of ESI and related responses

should be reasonably targeted, clear, and as specific as possible.

ESI AGREEMENT AND ORDER - 1
(2:18-CV-00405-RSM)

4825-6924-6572V.1 0067901-000133

**B.      ESI Disclosures**

By July 9, 2018, or at a later time if agreed to by the parties, each party shall disclose:

1.      <u>Custodians.</u> The five custodians most likely to have discoverable ESI in their possession, custody or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under his/her control.

2.      <u>Non-custodial Data Sources.</u> A list of non-custodial data sources (e.g. shared drives, servers, etc.), if any, likely to contain discoverable ESI.

3.      <u>Third-Party Data Sources.</u> A list of third-party data sources, if any, likely to contain discoverable ESI (e.g. third-party email and/or mobile device providers, "cloud" storage, etc.) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4.      <u>Inaccessible Data.</u> A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B).

**C.      Preservation of ESI**

The parties acknowledge that they have a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control. With respect to preservation of ESI, the parties agree as follows:

1.      Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody or control.

2.      All parties shall supplement their disclosures in accordance with Rule 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure

ESI AGREEMENT AND ORDER - 2
(2:18-CV-00405-RSM)

4825-6924-6572V.1 0067901-000133

where that data is created after a disclosure or response is made (unless excluded under (C)(3) or (D)(1)-(2) below).

      3.      Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

      a.      Deleted, slack, fragmented, or other data only accessible by forensics.

      b.      Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

      c.      On-line access data such as temporary internet files, history, cache, cookies, and the like.

      d.      Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).

      e.      Back-up data that are substantially duplicative of data that are more accessible elsewhere.

      f.      Server, system or network logs.

      g.      Data remaining from systems no longer in use that is unintelligible on the systems in use.

      h.      Electronic data (e.g. email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices), provided that a copy of all such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

      i.      Logs of calls made from cellular phones.

      j.      Voicemail messages; instant messages; text messages.

**D.    Privilege**

      1.      With respect to privileged or work-product information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

4825-6924-6572V.1 0067901-000133

2.      Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

3.      Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party, and its production shall not constitute a waiver of such protection, if: (i) such information appears on its face to have been inadvertently produced or (ii) the producing party provides notice within 15 days of discovery  by  the producing party of the inadvertent production.

**E.          ESI Discovery Procedures**

1.      <u>On-site inspection of electronic media.</u> Such an inspection shall not be permitted absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

2.      <u>Search methodology.</u> The parties shall timely attempt to reach agreement on appropriate search terms or queries (as used herein, a "query" employs limiting logic so that it and its results are necessarily more restrictive than a search term, such as by using "and" or imposing time restrictions), or an appropriate computer- or technology-aided methodology, before any such effort is undertaken. The parties shall continue to cooperate in revising the appropriateness of the search terms or computer- or technology-aided methodology.

In the absence of agreement on appropriate search terms, or an appropriate computer- or technology-aided methodology, the following procedures shall apply:

a.      A producing party shall disclose the search terms or queries, if any, and methodology that it proposes to use to locate ESI likely to contain discoverable information. The parties shall meet and confer to attempt to reach an agreement on the producing party's search terms and/or other methodology.

b.      If search terms or queries are used to locate ESI likely to contain discoverable information, a requesting party is entitled to no more than 5 additional terms or queries to be used in connection with further electronic searches absent a showing of

ESI AGREEMENT AND ORDER - 4
(2:18-CV-00405-RSM)

4825-6924-6572V.1 0067901-000133

good cause or agreement of the parties. The 5 additional terms or queries, if any, must be provided by the requesting party within 30 days of receipt of the producing party's production.

c. Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided. Absent a showing of good cause, each search term or query returning more than 500 megabytes of data are presumed to be overbroad, excluding Microsoft PowerPoint files, image and audio files, and similarly large file types. In the event a search term returns more than 500 megabytes of data, the parties shall meet and confer in a good faith attempt to narrow the scope of the search term appropriately or to reach an agreement that the search term is not overbroad despite returning more than 500 megabytes of data.

d. The producing party shall search both non-custodial data sources and ESI maintained by the custodians identified above.

3. Format. The parties agree that ESI will be produced to the requesting party with searchable text, in a format to be decided between the parties. The parties will confer in good faith intending to agree to production of load files for e-discovery software unless limited by cost or other practical limitations. Acceptable formats include, but are not limited to, native files, multi-page TIFFs (with a companion OCR or extracted text file), single-page TIFFs (only with load files for e-discovery software that includes metadata fields identifying natural document breaks and also includes companion OCR and/or extracted text files). Unless otherwise agreed to by the parties, files that are not easily converted to image format, including but not limited to spreadsheet, database and drawing files, should be produced in native format.

a. Each document image file shall be named with a unique Bates Number (e.g. the unique Bates Number of the page of the document in question, followed by its file extension). File names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, i.e., the original formatting, the metadata (as noted below) and, where

ESI AGREEMENT AND ORDER - 5
(2:18-CV-00405-RSM)

4825-6924-6572V.1 0067901-000133

applicable, the revision history. The parties shall produce their information in the following format: single- page images and associated multi-page text files containing extracted text or with appropriate software load files containing all requisite information for use with the document management system (e.g., Concordance® or Summation®), as agreed to by the parties.

b.       The parties shall consider whether or not the full text of each electronic document shall be extracted ("Extracted Text") and produced in a text file.  If the parties so agree, the Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with a unique Bates Number (e.g. the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

c.       If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

d.       Microsoft PowerPoint and other Presentation Files.  The Parties shall process presentations (MS PowerPoint, Google Presently) to include hidden slides and speaker's notes by imaging in a way that both the slide and the speaker's notes display on the TIFF image.

4.       De-duplication.  The parties may de-duplicate their ESI production within a custodian's data.   For emails with attachments, the hash value is generated based on the parent/child document grouping.

5.       Metadata fields.  If the requesting party seeks metadata, the parties agree that only the following metadata fields need be produced:  document type; custodian and duplicate custodians; author/from; recipient/to, cc and bcc; title/subject; file name and size; original file path; date and time created, sent, modified and/or received; hash value; and the source from which the ESI was produced.  The "source" of ESI shall be the name of the person who was the custodian of the ESI or, if the name of a person is not available, the storage location (e.g., "Regulatory Shared Drive–Wayne, PA"). This information will be included in the

4825-6924-6572V.1 0067901-000133

"Author," "Recipient," "Date," and "Source" fields (respectively) for each document in the load file associated with the document images. Although it is presumed generally that the above list of metadata fields will be provided, the list of metadata fields is intended to be flexible and may be changed by agreement of the parties, particularly in light of advances and changes in technology, vendor and business practices.

6.      Hard-Copy Documents.  If the parties elect to produce hard-copy documents in an electronic format, the production of hard-copy documents shall include a cross-reference file that indicates document breaks and sets forth the Custodian or Source associated with each produced document.   Hard-copy documents shall be scanned using Optical Character Recognition technology and searchable ASCII text files shall be produced (or Unicode text format if the text is in a foreign language), unless the producing party can show that the cost would outweigh the usefulness of scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI). Each file shall be named with a unique Bates Number (e.g. the Unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

7.      Privilege Log Based on Metadata.  The parties agree that privilege logs shall be provided.  The privilege log shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection).   For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title and date created.   Should the available metadata provide insufficient information for the purpose of evaluation the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure.

10.      Redactions.  In the event that a document requires redaction, the Parties agree that native files and full text need not be produced.  The producing party must provide OCR for the

4825-6924-6572V.1 0067901-000133

non-redacted portions of the document, and must provide metadata including the subject, original

file path, and field name, unless redaction of such information is necessary to ensure

nondisclosure of the redacted material.  The TIFF image should delineate the portion of the

document redacted with the word "Redacted" contained in the area of the redaction.   A

production load file field should be populated to indicate the document contains a redaction

       DATED this 28th day of June, 2018.


WILLIAMS, KASTNER & GIBBS PLLC      DAVIS WRIGHT TREMAINE LLP


By: s/Daniel A. Brown                     By: s/Stuart R. Dunwoody
    Daniel A. Brown, WSBA #22028          Stuart R. Dunwoody, WSBA #13948
    Daniel J. Velloth, WSBA #44379          Conner G. Peretti, WSBA #46575
    Blair I. Fassburg, WSBA #41207       1201 Third Avenue, Suite 2200
601 Union Street, Suite 4100               Seattle, WA 98101
Seattle, WA 98101-2380                  Tel: 206-622-3150
Tel: 206-628-6600                       Fax: 206-757-7700
Fax: 206-628-6611                     Email:  stuartdunwoody@dwt.com
Email:  dbrown@williamskastner.com    Email:  connerperetti@dwt.com
Email:  dvelloth@williamskastner.com

*Attorneys for Plaintiff Phytelligence, Inc.*    *Attorneys for Defendant Washington State
University*

**ORDER**

Based on the foregoing, IT IS SO ORDERED.

DATED: June 29, 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE